TARA K. MCGRATH
United States Attorney
NICHOLAS W. PILCHAK
California Bar No. 331711
JANAKI G. CHOPRA
California Bar No. 272246
ERIC R. OLAH
California Bar No. 295513
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
(619) 546-8817
janaki.chopra@usdoj.gov

Attorneys for the United States

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:   22CR1152-BAS |
| Plaintiff, | Date:   December 4, 2023 |
| | Time:   2:45 p.m. |
| v. | |
| | Honorable Cynthia A. Bashant |
| KARIM ARABI (1), | THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT KARIM ARABI'S MOTION FOR A BILL OF PARTICULARS [ECF 191] |
| Defendant. | |

I.

INTRODUCTION

The first superseding indictment ("FSI") provides Defendant Karim Arabi with proper notice of the charges against him and the United States' theory underlying the charges. In addition, the voluminous discovery produced to date alleviates any need for particular details about the United States' theory. Dr. Arabi's motion for a bill of particular ("Motion") requests information that is located in the discovery produced. In fact, Dr. Arabi's own briefing in this case makes clear that he already knows the answer to some, if not all, of the particulars he has requested. His Motion should be denied.

## II.

## FACTUAL BACKGROUND

On July 19, 2022, the grand jury returned a 24-page FSI charging Dr. Arabi and three others with wire fraud conspiracy, wire fraud, and conspiracy to launder money. *See generally* ECF 9. Dr. Arabi was arraigned on the FSI on August 10, 2022. With regard to the wire fraud conspiracy, the FSI alleges 23 manner and means of the conspiracy. *Id.* at ¶ 15. Further, while wire fraud has no overt act requirement and therefore pleading overt acts is unnecessary to state the offense, and while the United States is certainly not obligated to allege all of the overt acts it intends to introduce at trial relating to the wire fraud conspiracy, the FSI nevertheless alleges 35 specific overt acts committed in furtherance of the wire fraud conspiracy. *Id.* at ¶ 16. In addition to the 24-page FSI, the United States has produced more than 1.5 million pages of documents and at least thirty-four audio and/or video recordings. Each voluminous discovery production has been accompanied by a detailed index. The indexes and most of the files, which are generally produced in their native format, are searchable. Also included in the discovery were two documents prepared by Qualcomm's outside counsel and shared with the United States: (1) a 54-slide PowerPoint presentation summarizing some of the most relevant information uncovered during their investigation of many of the facts at issue in this case, and (2) a detailed, 79-page table summarizing hundreds of the most relevant documents from the civil discovery in Qualcomm's fraud suit against Dr. Arabi and two of his accomplices, complete with citations to each document's bates number.

The charges in the FSI arise from a scheme devised by Dr. Arabi and others to fraudulently dupe Qualcomm into agreeing to pay $180 million for technology it legally and unknowingly already owned. Relevant to the instant Motion, the FSI alleges the following overt acts:

(1) on or about December 15, 2014, Dr. Arabi caused to be submitted an Info Sheet for a provisional patent for technology related to the DFT field in the name of Sheida Arabi ("Sheida") (FSI at ¶ 16d);

2

(2) on or about December 22, 2014, Dr. Arabi caused to be filed a provisional patent application for DFT technology with the U.S. Patent and Trademark Office ("USPTO") which listed Sheida as the inventor (FSI at ¶ 16g);

(3) on or about December 28, 2014, Dr. Arabi caused to be filed a second provisional patent application for DFT technology with the USPTO again listing Sheida as the inventor (FSI at ¶ 16h);

(4) on or about February 25, 2014, defendant Sanjiv Taneja ("Taneja") texted Dr. Arabi to help prepare the "quantifiable benefit" portion of Abreezio's presentation to Qualcomm, specifically asking for the "numbers" for the comparable technology Qualcomm was then using so that the Abreezio team would know the "threshold" to cross to help "calibrate" their position in their pitch to Qualcomm (FSI at ¶ 16p);

(5) on or about September 21, 2015, a sham Sheida email account controlled by Dr. Arabi emailed Taneja altered versions of the provisional patent applications Dr. Arabi had submitted in December 2014 (FSI at ¶ 16y); and

(6) on or about September 24, 2015, Taneja emailed another sham Sheida account controlled by Dr. Arabi asking for "Sheida" to sign a backdated patent assignment agreement, and, on the same evening, the sham account responded by attaching a signed version of the backdated patent assignment agreement (FSI at ¶ 16aa).

On November 13, 2023, approximately 16 months after Dr. Arabi's arraignment on FSI, and as part of approximately 280 total pages of motions and exhibits, Dr. Arabi filed the instant Motion requesting a bill of particulars.

III.

LEGAL BACKGROUND

Rule 7(f) of the Federal Rules of Criminal Procedure provides in part that "[t]he defendant may move for a bill of particulars before or within 14 days after arraignment or at a later time if the court permits." A district court is within its rights to deny an untimely motion for a bill of particulars. *Barnard v. United States*, 16 F.2d 451 (9th Cir. 1926) (affirming denial of defendant's request for a bill of particulars "more than a year after

arraignment" and on the day of trial because it was untimely); *United States v. Pyke*, 271 F. Supp. 359 (S.D.N.Y. 1967) (explaining consideration of untimely motions for a bill of particulars "would make a mockery" of Rule 7(f), and declaring "[s]uch disregard for the Rules will not be tolerated").

The decision on a request for a bill of particulars rests in the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. *Will v. United States*, 389 U.S. 90, 99 (1967). The Ninth Circuit has held that a bill of particulars serves three functions: (1) to inform the defendant of the nature of the charges with sufficient precision to enable the defendant to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable the defendant to plead his conviction or acquittal in bar of another prosecution for the same offense when the indictment is too vague and indefinite for such purpose. *United States v. Giese*, 597 F.2d 1170, 1180-81 (9th Cir. 1979) (quotations omitted). The purpose of a bill of particulars is not for a defendant to "know all the evidence the United States intends to produce, but only the theory of the government's case." *Yeargain v. United States*, 314 F.2d 881, 882 (9th Cir. 1963) (citation omitted).

The key factor in deciding whether a bill of particulars is warranted is whether the defendant has been adequately advised of the charges. This can be accomplished in a variety of ways, but is most commonly accomplished by reference to the indictment itself. *United States v. Robertson*, 15 F.3d 862, 873-874 (9th Cir. 1994), *rev'd on other grounds*, 514 U.S. 669 (1995). Within the Ninth Circuit, the use of a "bare bones" indictment employing the statutory language alone is permissible, so long as it clearly sets forth all the essential elements of the charged offense. *United States v. Crow*, 824 F.2d 761, 762 (9th Cir. 1987); *United States v. Awad*, 551 F.3d 930, 935 (9th Cir. 2009) (citations omitted) ("An indictment is sufficient if it contains 'the elements of the charged crime in adequate detail to inform the defendant of the charges and to enable him to plead double jeopardy.'"); *Robertson*, 15 F.3d at 873-874 (holding that a "bill of particulars was not necessary. . . because the indictment apprised [defendant] of the specific charges against him, thereby minimizing the danger of surprise at trial; aided him in preparing for trial; and protected

4

him against double jeopardy.”). “The test for sufficiency of the indictment is ‘not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards.” *Id.* (quoting *United States v. Hinton*, 222 F.3d 664, 672 (9th Cir. 2000)).

The court may also look beyond the indictment in determining whether the defendant has been adequately advised of the charges and may consider “all other disclosures made by the government.” *Id.*, 597 F.2d at 1180. “Full discovery will obviate the need for a bill of particulars.” *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir. 1983) (citing *Giese*, 597 F.2d at 1180, and *United States v. Clay*, 476 F.2d 1211, 1215 (9th Cir. 1973)); *accord United States v. Mitchell*, 744 F.2d 701, 705 (9th Cir. 1984) (“The purposes are served if the indictment itself provides sufficient details of the charges and if the Government provides full discovery to the defense.”). “The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense.” *United States v. Giffen*, 379 F. Supp.2d 337, 346 (S.D.N.Y. 2004).

Importantly, a defendant may not use a motion for a bill of particulars to obtain an explanation of the United States’ evidence at trial.  “A defendant is not entitled to know all the *evidence* the government intends to produce but only the *theory* of the government’s case. He is not entitled to know the content of the testimony of each of the government witnesses before trial.” *United States v. Ryland*, 806 F.2d 941, 942 (9th Cir. 1986) (emphasis in original; citations omitted); *see also Giese*, 597 F.2d at 1181 (court did not abuse its discretion in denying motion for bill of particulars seeking “when, where and how” of every act in furtherance of a conspiracy, when indictment and discovery provided defendant with information sufficient to meet purposes of a bill of particulars); *United States v. DiCesare*, 765 F.2d 890, 897 (9th Cir. 1985) (same). The defendant’s constitutional right is to know the offense with which he is charged, not the details of how it will be proved. *United States v. Kendall*, 665 F.2d 126, 135 (7th Cir. 1981); *see also United States v. Folsom*, 414 Fed. Appx. 95 (9th Cir. 2011) (unpublished) (holding that the

district court did not abuse its discretion in denying defendant's motion for a bill of particulars where defendant sought to compel the government to prove its theory); *United States v. Grace*, 401 F. Supp.2d 1103, 1114-15 (D. Mont. 2005) (denying a motion for a bill of particulars and holding that the defendants were entitled to know the government's theory, but they were not entitled to force the government to show in advance of trial through a bill of particulars that it can prove the theory).

IV.

ARGUMENT

As an initial matter, Dr. Arabi's Motion should be denied as untimely. Beyond the untimeliness issue, however, Dr. Arabi's Motion should be denied on the merits. As discussed below, the FSI and voluminous discovery in this case adequately equip him to prepare his defense.

A.    Dr. Arabi's Motion Should Be Denied As Untimely

Dr. Arabi's Motion was filed approximately 16 months after he was arraigned on the FSI. He is now in possession of approximately 1.5 million pages of discovery, much of which is searchable, and indexes to assist him in reviewing that discovery. He is also in possession of detailed summaries of this case that analyze the timeline and most significant pieces of evidence relevant to this prosecution. Indeed, Dr. Arabi's own briefing in this case – 280 pages of briefing – demonstrates his grasp of the United States' theory and evidence. As such, at this juncture, which is certainly more than 14 days after Dr. Arabi's arraignment on the FSI, the Court should deny his Motion as untimely.

B.    A Bill Of Particulars Is Not Necessary

Dr. Arabi requests five particulars in his Motion, none of which justifies a bill of particulars. The United States addresses each in turn below.

//

//

1. *Particulars 1, 2, 3, and 5: Intellectual Property Developed by Dr. Arabi, How He Developed It, Agreements and Language in the Agreements Assigning the IP to Qualcomm, and Abreezio's Core Technology.*

Dr. Arabi argues the FSI is deficient in apprising him of "what Abreezio technology the government claims Dr. Arabi created, what he contributed to its creation, and what made it belong to Qualcomm before the Abreezio acquisition." Mot. at 5. He also argues that the FSI "offers no insight" into what Abreezio's core technology was. Mot. at 7.

This is a puzzling argument for Dr. Arabi to make in tandem with his 89-page, highly detailed motion for declaratory judgment, which identifies the two provisional patents describing technology supposedly invented by Sheida, identifies *by patent number* the final patent in which some of the core technology came to rest, attaches USPTO filings related to that patent, and attaches the key assignment agreement by which Dr. Arabi assigned to Qualcomm the legal rights to technology like that at issue in this case. *See* generally ECF 190. In that motion, which was filed on the same date as the instant Motion, Dr. Arabi re-affirms his claim that the two provisional patents originally filed by Sheida for technology later awarded "U.S. Patent No. 9,760,672 (the "'672 Patent")" and licensed to Abreezio, was actually developed by Sheida and not him. *Id.* at 6–7.

Contrary to Dr. Arabi's argument, the FSI and underlying discovery adequately arm him to answer these questions to build his defense, as shown by his intricate and highly-fact-dependent request for declaratory judgment. As to the first and fifth inquiry of what technology Dr. Arabi created and what technology was at the core of Abreezio, the FSI provides specific dates on which Dr. Arabi filed applications for provisional patents, as recited above. Specifically, the FSI discusses two specific provisional patent applications – one filed on December 22, 2014, and the other filed on December 28, 2014. Not only are these applications, and related information, attached to and included in specific emails between the co-conspirators (which has been produced in discovery), as alluded to in the FSI, a simple search of the discovery in this case for patent applications filed on these specific dates should inform Dr. Arabi as to which patents the United States believes he developed and are important to the formation of Abreezio and prosecution of this case. This

level of specificity in the FSI undercuts Dr. Arabi's argument in his Motion that the Unit Purchase Agreement references "more than twenty patents or provisional patents[,]" which is "too vast" a universe of technology to provide Dr. Arabi with fair notice of the charges against him. Mot. at 4. Even if all twenty patents or provisional patents listed in the Unit Purchase Agreement were at issue in this case, however, it can hardly be said that such a discrete and identifiable list is "too vast" a universe for him to prepare a defense against.

Dr. Arabi's second inquiry—how the United States intends to prove he created this technology, or what he contributed towards it—is not a question suitable for a bill of particulars. This type of information goes to the heart of how the United States will prove its theory that Dr. Arabi invented the technology. Although Dr. Arabi is entitled to know the United States' theory (i.e., that he, and not Sheida, invented the technology), he is not entitled to know *how* the United States intends to prove its theory at trial. The Ninth Circuit has unambiguously held that the United States does not have an obligation to disclose the manner and means by which a defendant committed the specific criminal acts alleged in an indictment. *See, e.g.*, *Giese*, 597 F.2d at 1181 (court did not abuse its discretion in denying motion for bill of particulars seeking "when, where and how" of every act in furtherance of a conspiracy, when indictment and discovery provided defendant with information sufficient to meet purposes of a bill of particulars); *Ellis v. United States*, 321 F.2d 931, 932 (9th Cir. 1963) (affirming district court's denial of motion for bill of particulars and stating that allegations describing the means and methods a defendant used to aid and abet others in the indictment is not necessary).

Dr. Arabi's third inquiry regarding what agreement, or language in an agreement, made the DFT technology at issue belong to Qualcomm is similar to his first inquiry – it is a question to which he already knows the answer through the discovery in this case. Specifically, the discovery in this case contains the employment agreement signed by Dr. Arabi that expressly prohibited him from owning technologies he developed if they related to Qualcomm's business, and bound him to disclose any inventions, avoid conflicts of interest, and adhere to Qualcomm's business conduct code, which prevented self-dealing.

Apart from the obvious fact that this is an agreement that Dr. Arabi himself once signed as a high-level Qualcomm employee and should know personally, his own briefing in this case reflects that he is aware of exactly which agreement is referenced in the FSI. *See* ECF 191 (Dr. Arabi's motion for declaratory relief). Dr. Arabi's motion for declaratory relief not only discusses this exact employment agreement, and the pertinent language, but also attaches it as an exhibit. *Id.* at 17, Ex. G. Dr. Arabi in fact asks the Court to invalidate this agreement due to language contained therein that he contests. *Id.* at 17.

Dr. Arabi cites several cases to support his requests. *See* Mot. at 6. In all of the cited cases, the courts found the charging document to be too general as to one or more counts to provide sufficient notice to the defendants. Generality is not a concern here. The FSI contains a significant amount of detail between the manner and means and the overt acts. Significantly, not one of the cases cited by Dr. Arabi stands for the proposition that the government is obligated to provide a roadmap of the evidence it intends to use at trial to prove its case. A bill of particulars is not necessary here.

2. *Particular 4: "Sensitive Internal Information" Belonging to Qualcomm that Dr. Arabi Provided to Sanjiv Taneja.*

Dr. Arabi argues that the FSI at paragraph 15 references "sensitive internal information" that he passed to Taneja to facilitate the sale of Abreezio to Qualcomm, but the FSI fails to describe what exactly this sensitive internal information is. Mot. at 7. Fortunately, Dr. Arabi needs to look no further than the very next paragraph in the FSI – paragraph 16p – to obtain more details about the nature of this sensitive information. Specifically, paragraph 16p of the FSI alleges that on or about February 25, 2014, Taneja texted Dr. Arabi to help prepare the "quantifiable benefit" portion of Abreezio's presentation to Qualcomm, specifically asking for the "numbers" for the comparable technology Qualcomm was then using so that the Abreezio team would know the "threshold" to cross to help "calibrate" their position in their pitch to Qualcomm. This text communication between Taneja and Dr. Arabi, along with related email communications between the co-conspirators, has been produced in discovery. It is also summarized in

search warrant affidavits submitted in connection with this case that also have been produced in discovery.

The single (unpublished) case Dr. Arabi cites in support of this request – *United States v. Algeria*, 1991 WL 33284 (S.D.N.Y. Mar. 7, 1991) – does not offer the support he expects. *Algeria* involved a prosecution of a conspiracy to alter vehicle identification numbers ("VINs"). The district court granted a motion for a bill of particulars as to the dates, times, and places of the alleged overt acts, and the VIN numbers of certain cars not identified in the indictment because the indictment included "no information about the defendants' relationship with each other, and the discovery materials . . . provide[d] little elucidation of contacts among the defendants." *Algeria*, 1991 WL 33284 at *3. The district court strived to ensure that the defendants were informed of a description of the exact property involved in the charged crimes. *Id.* This type of deficiency is not present in the instant case, where the FSI contains 35 detailed overt acts. Specific information about the technology and fraud involved in this case is replete in the FSI and voluminous discovery. Indeed, unlike *Algeria*, Dr. Arabi complains there is actually too much discovery, not too little. Consequently, a bill of particulars is not necessary for this information.

3.  *The Volume of Discovery Produced Weighs Against A Bill of Particulars.*

Dr. Arabi complains that the "volume and manner" of discovery produced in this case somehow cuts in favor of granting his Motion. Mot. at 8. Dr. Arabi cites several cases in support of this argument. For example, he cites *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987), which reversed the district court's denial of a motion for a bill of particulars in a case involving an insurance fraud scheme. The Second Circuit found that the government's failure to specify the dates of fake burglaries and three fraudulent documents involved in the scheme prejudiced the defendants' ability to prepare for trial as it left the "key events shrouded in mystery" at the commencement of trial. *Bortnovsky*, 820 F.2d at 575. Similarly, Dr. Arabi cites *United States v. Bazezew*, 783 F.Supp.2d 160, 168-69 (D.C. 2011), a bribery case in which the district court granted, in part, a motion for a bill of particulars where it found the indictment did not allege sufficient overt acts, and in fact

only alleged one overt act for each of the 16 charged defendants. Dr. Arabi also cites *United States v. Feil*, No. CR 09-00863 JSW, 2010 WL 1525263, *3 (N.D. Cal. Apr. 15, 2010) (unpublished), a drug conspiracy case, where the district court granted, in part, a motion for a bill of particulars directing the government to provide a list of overt acts for the co-conspirators where none were listed in the indictment. Finally, Dr. Arabi cites *United States v. Nachamie*, 91 F.Supp.2d 565, 574-76 (S.D.N.Y. 2000) (unpublished), in which the district court granted defendants' request for a bill of particulars to identify each fraudulent claim in a Medicare fraud scheme the government intended to prove at trial, but denied defendants' request for particulars related to the evidentiary detail supporting those claims.

All of these cases are distinguishable from the present case. The key events in this case are not shrouded in mystery. Much to the contrary, the 24-page FSI contains 23 manner and means of the conspiracy, and 35 overt acts, which include dates, names, and other information. The level of detail in the FSI serves as a thorough roadmap to the United States' case and theory. Beyond this roadmap, Dr. Arabi is also armed with voluminous, searchable discovery that sufficiently provides the evidence underpinning the allegations in the FSI and, importantly here, answers the inquiries in his Motion. Indeed, Dr. Arabi's own briefing in this case to date demonstrates that he understands the charges and the evidence, and has analyzed the voluminous discovery produced. A bill of particulars is not necessary.

V.

CONCLUSION

For the reasons stated, the Court should deny the motion for a bill of particulars.

DATED: November 27, 2023.          Respectfully submitted,

TARA K. MCGRATH
United States Attorney
*/s/ Janaki G. Chopra*
NICHOLAS W. PILCHAK
JANAKI G. CHOPRA
ERIC R. OLAH
Assistant United States Attorneys

11