ADAM GORDON
United States Attorney
NICHOLAS W. PILCHAK
California Bar No. 331711
JANAKI G. CHOPRA
California Bar No. 272246
ERIC R. OLAH
California Bar No. 295513
Assistant U.S. Attorneys
880 Front Street, Room 6293
San Diego, CA 92101
Tel: (619) 546-9709
Email: nicholas.pilchak@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.: 22-cr-1152-BAS |
| Plaintiff, | Date: January 30, 2026 |
| | Time: 9:30 a.m. |
| v. | |
| | Honorable Cynthia Bashant |
| SANJIV TANEJA (3), | |
| Defendant. | **THE UNITED STATES' SENTENCING MEMORANDUM AND MOTION UNDER USSG § 5K1.1** |

Defendant Sanjiv Taneja was a key participant in a $180 million fraud, and personally received over $10 million in proceeds. He made a series of brazen false representations to the victim in order to conceal the central role of his co-defendant, Karim Arabi. However, he also cooperated in the victim's private investigation and civil lawsuit, turning over valuable evidence; cooperated in this criminal investigation, providing extensive testimony against Dr. Arabi at his jury trial; and assisted with the criminal investigation in other helpful ways. Based on his extensive cooperation, the United States recommends a 10-level downward variance for Taneja under USSG § 5K1.1. To avoid an unwarranted disparity with Dr. Arabi, who himself received a post-trial sentence of 48 months without ever accepting responsibility for the scheme

he engineered, led and executed—based on a downward variance of roughly 13 levels off Dr. Arabi's Guidelines range—the United States recommends a sentence of time served for Taneja, followed by three years of supervised release. He should also be ordered to pay $10,046,571.82 in restitution and to forfeit $7,248,353.07.

**I.**

## STATEMENT OF THE CASE

Taneja pleaded guilty to money laundering in violation of Count 7 of a superseding indictment on August 10, 2023. ECF 141, 144. He also admitted conduct constituting a wire fraud conspiracy underpinning the laundering activity.

**II.**

## STATEMENT OF FACTS

**A.     The Fraud.**

Dr. Arabi recruited Taneja to be the Chief Executive Officer of Abreezio LLC, a company purpose-built to hide that Arabi himself had invented its core technology, which was fraudulently marketed and sold to Qualcomm for $180 million. Taneja never met Sheida Alan, then Sheida Arabi, who was the key technology's putative inventor. As he admitted in his plea agreement and testified at trial, Ms. Alan never "participate[d] in technical or strategic decision-making concerning Abreezio at any time." Dr. Arabi, though, was regularly involved in decisions big and small, including technical discussions and comparatively trivial concerns like the company laptops or office space.

Taneja agreed with Dr. Arabi and others to conceal Arabi's role in Abreezio and its technology. For example, Taneja regularly corresponded with email addresses bearing Sheida's name, even though he knew the accounts were used by Arabi. Taneja referred to Arabi as "Sheida" or "SA" in written correspondence with his co-conspirators, like Bradley Quinton. And Taneja repeatedly lied in communications with Qualcomm, both to fluff up Abreezio's bona fides and to hide Dr. Arabi's role in the company. Taneja even solicited sensitive competitive commercial information about

*United States' Sentencing Memorandum*                2                *22-CR-1152-BAS-003*

Qualcomm from Arabi, to refine Abreezio's marketing pitches. Finally, after the deal closed and Qualcomm wired over $150 million to consummate the Abreezio purchase, Taneja wrote one more sham email to a fake account bearing Ms. Alan's name, as a final piece of window dressing to suggest he believed he was corresponding with a real person and not his co-conspirator, Dr. Arabi.

**B.    The Attempted Cover-Up.**

When Dr. Arabi learned he was being investigated in the spring of 2017, one of the things he did was reach out to Taneja and demand a meeting. When the pair met at a restaurant, as Taneja testified at trial, Dr. Arabi directed Taneja to delete his emails, to prevent them from reaching Qualcomm in its private investigation. Fortunately, Taneja had a change of heart after the meeting and recovered the deleted messages.

**C.    The Money Laundering.**

Taneja was paid over $10 million as part of the Abreezio acquisition. He invested the proceeds in a variety of ways in domestic bank and investment accounts. One transaction involving Abreezio was charged as a money laundering spending clause violation, under 18 U.S.C. § 1957. This was the count of Taneja's conviction.

**D.    The Civil Suit.**

Qualcomm sued Dr. Arabi, Ms. Alan, and Taneja in October 2017. Unlike Dr. Arabi, there is no evidence Taneja lied in his discovery responses in the civil suit. Instead, he settled with Qualcomm and agreed to cooperate extensively, sitting for interviews and providing additional evidence such as his text messages with Dr. Arabi and others. Taneja also recovered his own deleted emails, despite Arabi's attempts to cause their destruction. Although he admitted at trial that some of his statements to Qualcomm in its private investigations falsely minimized his own role, in general Taneja's cooperation with the private investigation was very helpful to the United States's later criminal investigation.

**E.      Cooperation in the Criminal Investigation.**

When indicted in this case, Taneja filed a motion to dismiss the indictment for duplicity, which was denied.  ECF 109, 118.  Thereafter, however, he elected to accept responsibility, plead guilty, and cooperate with the investigation.  ECF 141.

Taneja's cooperation with the government's investigation was extensive.  He traveled to San Diego to sit for lengthy debriefs on August 14, 2023; August 24, 2023; and September 22, 2023.  The second superseding indictment, which added Bradley Quinton as a defendant, was obtained in part using information from those debriefs.  Similarly, information provided by Taneja was used in the package submitted to initiate extradition proceedings against Quinton, who served as Taneja's co-conspirator and Abreezio's Chief Technology Officer in the underlying fraud scheme, and information from Taneja's plea agreement was forwarded to Canadian authorities as a supplement to Ms. Alan's extradition package.  Finally, Taneja also provided detailed information in debriefing sessions about uncharged co-conspirators, like Ziad Mansour.

Taneja, of course, also testified extensively at Dr. Arabi's trial.  Prior to trial, he participated in five different trial preparation sessions with prosecutors.  He reviewed and discussed dozens of documents, including many that he had produced in discovery or to Qualcomm as part of his civil cooperation.  At trial, Taneja testified that he spent roughly 61 hours preparing for his trial testimony. Separately, Taneja provided ancillary information to the investigation team in response to discrete requests over the lifespan of the investigation.  Taneja also reviewed the government's draft disclosures for its electrical engineering expert, Professor Dennis Sylvester, although Taneja never directly interfaced with Professor Sylvester or provided him with written comments.  And he reviewed reports submitted by Dr. Arabi's expert, Professor Manoj Sachdev.

Finally, Taneja testified at trial over the course of three different days and numerous hours, including protracted and vigorous cross-examination by Dr. Arabi's lead counsel.  During Taneja's testimony, which spanned roughly 574 transcript pages (out of a total of about 3,700), the prosecution admitted dozens of important exhibits,

including Taneja's own text messages whose authentication by Taneja himself defeated repetitive evidentiary attacks by the defense. Finally, Taneja remains available to testify at Ms. Alan and Brad Quinton's trials.

### III.

### ARGUMENT

**A.    The Advisory Guidelines Calculations.**

The Court should adopt the advisory guidelines calculation set out in the parties' plea agreement, which reflect the parties' bargain.

**B.    The Court Should Use the Bargained-For Loss Amount.**

In the parties' plea agreement, they agreed to recommend a Guidelines-adjusted loss amount of over $9.5 million for Taneja's personal receipts from the charged scheme, which were just over $10 million. The Court should accept this loss amount for purposes of the Guidelines calculation. Alternatively, it should consider a variance under Section 3553(a) equivalent to a 6-level reduction, to bring Taneja's sentencing exposure in line with the Guidelines contemplated by the parties' plea agreement, and—as argued in more detail below—to avoid an unwarranted sentencing disparity with Dr. Arabi's recent 48-month sentence.

**C.    Civil Cooperation Adjustment.**

Per the parties' plea agreement, the Court should award a variance equivalent to a two-level downward departure based on Taneja's cooperation in Qualcomm's civil suit. Although cooperating with a private party in their investigation does not formally qualify for cooperation credit under USSG § 5K1.1, the parties agreed that Taneja's assistance to Qualcomm in its private investigation warranted some sentencing relief. As explained above, and as shown at trial, the information Taneja provided to Qualcomm—and especially the documents he produced—were a material benefit to the investigation and prosecution of this case, justifying some sentencing credit even before his cooperation in this criminal matter.

*United States' Sentencing Memorandum*                                    *22-CR-1152-BAS-003*

**D.    Remaining Adjustments.**

The Court should impose a one-level upward adjustment for violation of 18 U.S.C. § 1957, a three-level reduction for acceptance of responsibility, and a two-point reduction for Taneja's status as a zero-point offender.  It should not impose a role adjustment, as Taneja played neither an aggravating nor a mitigating role in the offense.  *See* PSR ¶ 93.  In particular, Dr. Arabi recruited Taneja (and everyone else) and was far more culpable than Taneja but nevertheless received no aggravated role adjustment.  Thus, despite Taneja's status as Abreezio's CEO and his acknowledged role as the primary communicator with Qualcomm during the fraud, an aggravating role adjustment would be inappropriate in his case.

**E.    Section 5K1.1 Reduction.**

Taneja cooperated extensively and—at least on the relative timescale of this case—early.  He was the first to plead guilty, and his codefendant Akbar Shokouhi entered a guilty plea after Taneja pled and agreed to cooperate.  His assistance included lengthy trial testimony, some input on technical expert disclosures, lengthy preparation sessions (each of which necessitated travel at his own expense), and information that sparked a superseding indictment and extradition proceedings against a more-culpable codefendant.  Taneja's testimony and cooperation were also public and publicized within his relatively discrete community of engineers.  And he remains available and willing to cooperate against his two remaining co-defendants.  The Court should grant a ten-level reduction under Section 5K1.1 to recognize the scope, duration and effect of this cooperation.

**F.    Section 3553(a).**

One of the statutory goals of sentencing is to avoid unwarranted sentencing disparities with similarly-situated defendants.  18 U.S.C. § 3553(a)(6).  In this case, Taneja's much more culpable co-defendant, Karim Arabi, filed every conceivable motion to dismiss and suppress—and some that were almost inconceivable—and refused to accept any responsibility even after a resource-intensive jury trial that

spanned five weeks.  Dr. Arabi recruited Taneja (and every other member of the conspiracy) and, through his straw-holding sister, received almost ten times more proceeds than Taneja.  Arabi never admitted his role in the conspiracy, and continued to deny almost every component of his factual guilt at sentencing.  Nevertheless, he received a sentence of 48 months.

Sentencing Taneja to custody under those circumstances would pose an unwarranted disparity with Arabi.  The Court should vary downward a modest two levels from Taneja's otherwise-applicable Guidelines range (6 to 12 months in custody) to a sentence of time served.

## G. <u>Supervised Release.</u>

A term of supervised release is appropriate in Taneja's case based chiefly on the need to assure restitution payments beyond the amount of seized assets.

## H. <u>Financial Penalties.</u>

### 1. *Restitution*

Restitution is mandatory for this money laundering offense.  18 U.S.C. § 3663A(a), (c)(1)(A)(ii), (c)(1) (B).  The United States recommends a restitution order in the amount of Taneja's personal receipts, which is $10,046,571.82.  This amount is contemplated by Taneja's plea agreement, although he has reserved the right to argue that restitution be no higher than the amount of seized assets, which is roughly $7,248,353.07.  *See* ECF 144-1 at 6–7.

The United States would have no objection to a provision in Taneja's restitution order giving him credit for restitution voluntarily paid by his codefendants, to the extent that that amount overlaps with his order of restitution.[1]  The United States will tender a proposed order separately to chambers.

[1]  It would not be proper to grant Taneja joint and several restitution with Shokouhi, however, because—like Taneja—Shokouhi will likely be ordered to repay only his personal receipts, which do not overlap with Taneja's personal receipts.  Dr. Arabi, on the other hand, was ordered to repay the entire outstanding balance of Qualcomm's losses.

*United States' Sentencing Memorandum*

*22-CR-1152-BAS-003*

## 2. Forfeiture

The Court previously entered a preliminary order of forfeiture (POF) against Taneja, based on the parties' agreement. ECF 496. The Court should confirm the terms of this order at Taneja's sentencing, orally pronounce the forfeiture, and incorporate it in his judgment of conviction. The Court should also note, however, that by the parties' agreement, the seized assets subject to forfeiture under the POF are to be turned over to the Clerk of Court for application to restitution, and should credit as such against Taneja's money judgment. *Id.* at 2–3.

## 3. Fine

Per the parties' plea agreement, and in light of the sizable restitution and forfeiture judgments contemplated, the United States joins Probation's recommendation and does not recommend a fine. *See* PSR ¶ 189.

## IV.

## CONCLUSION

Taneja should be sentenced to time served, followed by three years of supervised release. He should also be ordered to pay $10,046,571.82 in restitution and to forfeit $7,248,353.07.

DATED: January 23, 2026

ADAM GORDON
United States Attorney

/s/ Nicholas W. Pilchak
NICHOLAS W. PILCHAK
JANAKI G. CHOPRA
ERIC R. OLAH
Assistant U.S. Attorneys